UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**BARBARA HATCH and CHARLES HATCH,**

    **Plaintiffs,**

v.              Case No: 6:17-cv-2142-Orl-41DCI

**GEOVERA SPECIALTY INSURANCE COMPANY,**

    **Defendant.**
_____/

**ORDER**

THIS CAUSE is before the Court on Defendant's Motion for Summary Judgment (Doc. 44) and Plaintiffs' Motion for Final Summary Judgment (Doc. 60). This cause is also before the Court on Plaintiffs' Daubert Motion to Exclude Testimony of Defense Experts, Arthur Baker and Jason Neumann (Doc. 59); Defendant's Daubert Motion to Strike Plaintiffs' Expert Witness, Kathleen Norflus (Doc. 61); Defendant's Daubert Motion to Strike Plaintiffs' Expert Witness, James Purcell (Doc. 62); Defendant's Motion in Limine Regarding Cumulative Expert Testimony (Doc. 63); Defendant's Daubert Motion to Strike or Limit Plaintiffs' Expert Witness, Sonny Gulati (Doc. 64); Defendant's Motion in Limine Regarding Testimony and Evidence Regarding Claims Handling and/or Bad Faith (Doc. 74); Defendant's Motion in Limine Regarding Contract Interpretation (Doc. 75); Defendant's Motion in Limine Regarding Reference to and Improper Statements Regarding the Daubert Standard (Doc. 76); Defendant's Omnibus Motion in Limine (Doc. 77); and Defendant's Motion to Strike Plaintiffs' Objection to Defendant's Summary Judgment Response (Doc. 84). Each motion will be addressed in turn.

    **I.  MOTION TO STRIKE**

As an initial matter, Defendant filed a Motion to Strike Plaintiffs' Objection to Defendant's Summary Judgment Response (Doc. 84). Defendant filed its Response (Doc. 73) to Plaintiffs' Motion for Summary Judgment on February 27, 2019. On March 12, 2019, Plaintiffs filed their "Objection to Defendant's Summary Judgment Response Pursuant to Fed. R. Civ. P. 56(c)" (Doc. 78). Clearly, although titled "Objection," this document constitutes Plaintiffs' Reply, which they were permitted to file pursuant to the Case Management and Scheduling Order ("CMSO," Doc. 14 at 6). Moreover, the document was timely filed. The CMSO permitted Plaintiffs to file their Reply within fourteen days of Defendant's Response being served, (*id.*); it was filed within that timeframe.[1] Therefore, the Motion to Strike will be denied.

## II. BACKGROUND

On February 7, 2017, Plaintiff Barbara Hatch arrived at her home to discover it was flooded due to a leak that originated from the hot water heater. (Doc. 44 at 4 ¶¶ 3, 5–6; Pls.' Resp., Doc. 48, at 1 ¶¶ 3, 5–6; Doc. 60 at 2 ¶ 3; Doc. 73 at 6 ¶ 3). Later it was determined that approximately 4000 gallons of water had flooded the home. (Doc. 60 at 2 ¶ 5; Doc. 73 at 6 ¶ 5). At the time, the home was insured under an "all-risk policy" issued by Defendant. (Doc. 44 at 4 ¶¶ 1–2; Doc. 48 at 1 ¶¶ 1–2; *see also generally* "Policy," Doc. 44-1). Plaintiffs reported the claim to Defendant, who retained Cindy Jean Bootier to inspect the property. (Doc. 60 at 2 ¶ 7; Doc. 73 at 6 ¶ 7). A company called ServPro was also hired to perform water mitigation. (Doc. 60 at 2 ¶ 6; Doc. 73 at 6 ¶ 6). Defendant issued a payment to Plaintiffs for repairs to the property. (Doc. 60 at 5 ¶ 47; Doc. 73 at 9 ¶ 47).[2]

---

[1] Defendant erroneously states that its Response was filed on February 12 instead of February 27, 2019, and Defendant uses the former date to assert that Plaintiffs' filing was untimely. Defendant apparently confused its Response to Plaintiffs' *Daubert* motion (Doc. 67)—which was filed on February 12—with its Response to Plaintiffs' Motion for Summary Judgment.

[2] The amount paid to Plaintiffs is disputed.

When Plaintiffs began demolition and repairs, they discovered a crack in the floor of the master bedroom closet. (Doc. 60 at 3 ¶ 17; Doc. 73 at 6 ¶ 17). Plaintiffs then retained Guardian Inspection & Information Services ("Guardian") to perform an inspection. (Doc. 60 at 3 ¶ 17; Doc. 73 at 6 ¶ 17). And, Defendant retained Summit Engineering Consulting, Inc. ("Summit"). (*See generally* Summit Residence Damage Evaluation, Doc. 60-7). Both reported additional damage to the foundation and structure of the home ("structural damage"), and Defendant denied coverage, concluding that it was excluded under the Earth Movement Exclusion of the Policy. (*See generally* June 14, 2017 Letter, Doc. 60-12, at 76–81).

The parties have now filed cross motions for summary judgment addressing whether the structural damage should have been excluded, whether the Policy covers loss to the hot water heater system itself, and whether Defendant sufficiently compensated Plaintiffs for the non-structural damage.

### III.   SUMMARY JUDGMENT

#### A.   Legal Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In ruling on a motion for summary judgment, the Court construes the facts and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). However, when faced with a "properly supported motion for summary judgment," the nonmoving party "must come forward with specific factual evidence, presenting more than mere allegations." *Gargiulo v. G.M. Sales, Inc.*, 131 F.3d 995, 999 (11th Cir. 1997).

"[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "Essentially, the inquiry is 'whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Sawyer v. Sw. Airlines Co.*, 243 F. Supp. 2d 1257, 1262 (D. Kan. 2003) (quoting *Anderson*, 477 U.S. at 251–52); *see also LaRoche v. Denny's, Inc.*, 62 F. Supp. 2d 1366, 1371 (S.D. Fla. 1999) ("The law is clear . . . that suspicion, perception, opinion, and belief cannot be used to defeat a motion for summary judgment.").

**B.     Analysis**

All of the parties' arguments involve interpretation of the Policy. "Where the language in an insurance contract is plain and unambiguous, a court must interpret the policy in accordance with the plain meaning so as to give effect to the policy as written. *Washington Nat'l Ins. Corp. v. Ruderman*, 117 So. 3d 943, 948 (Fla. 2013). "In construing insurance contracts, courts should read each policy as a whole, endeavoring to give every provision its full meaning and operative effect." *Id.* (quotation omitted). On the other hand, policy language is ambiguous "if the language is susceptible to more than one reasonable interpretation, one providing coverage and the other limiting coverage." *Id.* (quotation omitted). "Furthermore, in Florida, when an insurer relies on an exclusion to deny coverage, it has the burden of demonstrating that the allegations of the complaint are cast solely and entirely within the policy exclusion and are subject to no other reasonable interpretation." *Castillo v. State Farm Fla. Ins. Co.*, 971 So. 2d 820, 824 (Fla. 3d DCA 2007) (quotation omitted). "Once the insured establishes a loss apparently within the terms of an all-risk

policy, the burden shifts to the insurer to prove that the loss arose from a cause which is excepted." *Id.* (quotation omitted).

> 1. *Structural Damage*

Plaintiffs assert that the structural damage is covered by the Policy—specifically pointing to the Policy provision addressing accidental discharge or overflow of water or steam. Defendant asserts that the structural damage is excluded under the Earth Movement Exclusion.

The Policy is broken up into sections. The first section describes the property that is covered. As relevant here, "[t]he dwelling on the '[R]esidence [P]remises'"—i.e., Plaintiffs' home—"including structures attached to the dwelling" are covered, but "land, including land on which the dwelling is located" is not covered. (Doc. 44-1 at 9).

The second relevant section addresses the "perils insured against," and states that the Residence Premises is insured against "direct physical loss" subject to a list of exceptions. (*Id.* at 15). As relevant here, the Policy provides:

> We do not insure . . . for loss . . . [c]aused by . . . [s]ettling, shrinking, bulging or expansion, including resultant cracking, of bulkheads, pavements, patios, footings, foundations, walls, floors, roofs or ceilings . . . .

(*Id.* at 15–16 (Exception c.(6)(f)). The next paragraph is titled "Exception [t]o c.(6)" and contains exceptions to all of the exceptions listed in Exception c.(6), including c.(6)(f). The Exception to c.(6) provision states:

> Unless the loss is otherwise excluded, we cover loss to [the Residence Premises] resulting from an accidental discharge or overflow of water or steam from within a . . . [p]lumbing, heating, air conditioning or automatic fire protective sprinkler system or household appliance on the "[R]esidence [P]remises."

(*Id.* at 16).

The last relevant portion of the Policy is the exclusions section. As relevant here, the Policy provides:

> We do not insure for loss caused directly or indirectly by any of the following.
>
> . . .
>
> Earth Movement
>
> Earth Movement [includes] . . . [a]ny . . . earth movement including earth sinking, rising or shifting.
>
> This Exclusion . . . applies regardless of whether [the earth movement] is caused by an act of nature or is otherwise caused.

(*Id.* at 18).

In other words, under the exception to Exception c.(6)(f), any damage caused by the accidental discharge of water from the hot water heater, including the structural damage at issue here, is covered "unless otherwise excluded." The logical reading of the Policy is that if coverage is excluded under the Earth Movement exclusion, it is "otherwise excluded," and therefore, whether the structural damage is covered turns on the issue of whether it was caused by earth movement.

The parties each submitted the opinions of experts to determine the cause of the structural damage. Leonard Brunotte, an inspector for Guardian, conducted the initial inspection for Plaintiffs, and he noted "visible evidence of movement" and cracking in multiple areas of the home. (Brunotte Dep., Doc. 60-5, at 22:2–21, 24:3–7). However, Mr. Brunotte had no opinion as to what caused the movement and cracking. (*Id.* at 24:8–11).

Defendant retained Summit to determine if the "reported cracking and movement . . . c[ould] be attributed to the plumbing loss associated with the hot water tank." (Doc. 60-7 at 1). Summit's report noted that, at some point, the carport had been enclosed, so there were

two independent floor slabs—one for the original structure and one for the enclosed carport area—with a construction joint between the interior concrete floor slab and the perimeter walls. (*Id.* at 2, 3). The inspector also "observed downward displacement" of both floor slabs, which was "consistent with recent settlement/movement of the underlying supporting soil." (*Id.* at 4). The report further documents "cracking and/or separation" of interior finishes on interior partition walls, separation between the wall and roof frame, and stair-step cracking on portions of the masonry block exterior walls, which is "consistent with" "recent settlement/movement of the underlying supporting soil." (*Id.* at 4–5).

The Summit report goes on to state that water could have come into contact with the compacted dry fill material supporting the floor slabs through the construction joint "result[ing] in settlement/movement of that fill material," which in turn, could have resulted in the downward displacement of the floor slabs and the other structural damage. (*Id.* at 5). Due to this prospect, Summit could not rule out the possibility that water from the hot water heater "caused or contributed to the recent settlement/movement [of] the soils supporting the home," which caused the damages at issue. (*Id.*). Summit then recommended geotechnical testing and evaluation "to further evaluate the documented settlement/movement of the soil supporting the home." (*Id.*). This testing was recommended to determine whether that settlement or movement occurred as a result of the water or an unrelated force. Nowhere in Summit's report did it opine that the structural damage to Plaintiffs' home was caused by anything other than settlement or movement of the soil supporting the home.

In response, Plaintiffs retained two experts to evaluate the cause of the structural damage to the home. Kathleen Norflus agreed with Summit's conclusion as to why the foundation was moving, explaining that "[w]hen you have a significant amount of water, it compacts the structural

fill underneath the foundation in the slab system" and when that fill compacts, the slab sitting on top of it moves. (Norflus Dep., Doc. 60-9, at 22:15–23:15). Similarly, Sonny Gulati opined "within a reasonable degree of professional probability that the subject property has suffered significant water damage caused by a burst water pipe, which resulted in internal soil erosion/densification of soil sediment beneath the foundation, causing differential movement of the foundation system." (Doc. 64-1 at 6).

As is apparent from the above litany of expert opinions, all of the experts—including Plaintiffs' experts—agree that the structural damage was caused by the movement of the earth beneath the foundation—either by compression or densification of the soil or by the erosion of the soil. Plaintiffs argue that the structural damage is still covered because their experts ultimately attribute the damage to the discharge of water from the hot water heater. Plaintiffs are correct that their experts eventually traced the damage back to the water. But, even relying on Plaintiffs' experts, the water did not directly cause the structural damage. There was an intervening step— the water caused the compression or erosion—i.e., earth movement—and the earth movement caused the structural damage. As clearly set forth in the Policy, it does not matter whether the earth movement was caused by natural forces or otherwise—if the earth movement is the source of the damage it is not covered. Again, even relying entirely on Plaintiffs' evidence, the earth movement caused the structural damage, and therefore, it is not covered.

Indeed, even the case relied on by Plaintiffs—*Liebel v. Nationwide Ins. Co. of Fla.*, 22 So. 3d 111 (Fla. 4th DCA 2009)—supports the conclusion that the structural damage is excluded from coverage. There, a water line under the plaintiff's home ruptured and eroded the soil beneath the home, which caused the foundation to settle, which in turn caused structural damage to the home. *Id.* at 112–13. Interpreting a very similar earth movement exclusion, the Fourth District Court of

Appeal stated that "the trial court was correct in holding that the Policy's earth movement exclusion included the loss to [the plaintiff's] home, as the plain and unambiguous meaning of the Policy and its earth movement exclusion warrant that result." *Id.* at 115.[3]

As an alternative argument, Plaintiffs assert that this Court should apply the Concurrent Cause Doctrine ("CCD"). In general, the CCD may be applied where "independent perils converge and no single cause can be considered the sole or proximate cause." *Sebo v. Am. Home Assurance Co.*, 208 So. 3d 694, 697 (Fla. 2016). In such a situation, "[t]he CCD provides that coverage may exist where an insured risk constitutes a concurrent cause of the loss even when it is not the prime or efficient cause." *Id.* at 698. However, in Florida, "parties may contract around the concurrent cause doctrine with an anti-concurrent cause provision." *Liberty Mut. Fire Ins. Co. v. Martinez*, 157 So. 3d 486, 487 n.1 (Fla. 5th DCA 2015); *Paulucci v. Liberty Mut. Fire Ins. Co.*, 190 F. Supp. 2d 1312, 1319 (M.D. Fla. 2002). The Policy contains an anti-concurrent cause provision, which states that loss caused by earth movement "is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss." (Doc. 44-1 at 18). Accordingly, even if the water from the hot water heater was a concurrent cause of the damage, it is excluded under the Policy.[4]

---

[3] Although the *Liebel* court did reverse the trial court, it was with regard to whether the policy at issue covered the cost of repairing the plumbing system itself, not the structural damage associated with the earth movement. 22 So. 3d at 117.

[4] To the extent Plaintiffs assert that the Efficient Proximate Cause doctrine should apply, the Policy's anti-concurrent cause provision also clearly contracts around such application. *Empire Indem. Ins. Co. v. Winsett*, 325 F. App'x 849, 852 (11th Cir. 2009) (analyzing a similar provision and noting that the addition of the "in any sequence" language to the anti-concurrent cause provision was clearly meant "to exclude applying the efficient proximate cause doctrine"); *CCRD, LLLP v. Landmark Am. Ins. Co.*, 8:12-cv-00933-T-27TBM, 2012 WL 13106429, at *3 (M.D. Fla. Sept. 20, 2012) (noting that "parties can contract around [the Efficient Proximate Cause] doctrine through an express provision in the policy" and concluding that an identical provision prohibited its application).

Accordingly, the structural damage is excluded under the Earth Movement exclusion, and Defendant is entitled to summary judgment on that portion of Plaintiffs' claim.

   2.   *Loss to the Water Heater System*

Defendant asserts that it is not liable for loss to the water heater itself or to the related plumbing system. Defendant cites a paragraph in the exception to Exception c.(6), which states: "We do not cover loss to the system or appliance from which this water or steam escaped." (Doc. 44-1 at 16). Plaintiffs do not dispute that damage to the actual water heater and system are not covered. (Doc. 48 at 19). Thus, Defendant is entitled to summary judgment as to this issue.

   3.   *Paid in Full*

Defendant moves for summary judgment on the remaining portion of Plaintiffs' claim, arguing that it paid all covered damages. Defendant has wholly failed to meet its burden for summary judgment as to this issue. First, Defendant references a litany of "evidence," which purportedly supports its argument that it paid Plaintiffs $43,639.55 for the non-structural damages. (*See e.g.*, Doc. 44 at 12 ¶¶ 87–93). However, in doing so, Defendant primarily cites generally, without pincites, to Exhibit 4 (Doc. 44–8)—which is an 87-page document. Further, in opposition to Defendant's argument, Plaintiffs cite evidence that could reasonably be interpreted as paying less than the amount necessary for the non-structural repairs. (*Compare* Statement of Loss, Doc. 44-8, at 84 (designating $38,541.39 of the payment for repairs) *with* Greene March 13, 2017 Estimate, Doc. 44-13, at 3 (estimating $44,671.00 for repairs)).

Finally, Defendant argues that Plaintiffs cannot claim more than the original estimate under the Policy until they have begun the repairs, at which time they are permitted to submit a "Replacement Cost claim." (Doc. 44 at 23). Defendant cites no authority for such a proposition. (*See e.g.*, Doc. 44 at 12 ¶ 91). Therefore, Defendant has utterly failed to submit a "properly

supported motion for summary judgment" with regard to the non-structural damage, and the motion will be denied as to that issue.

## IV. MOTIONS IN LIMINE AND *DAUBERT* MOTIONS

The parties have filed numerous motions in limine and *Daubert* motions. Each will be addressed in turn.

### A. Arthur Baker and Jason Neumann (Doc. 59)

Plaintiffs seek to exclude the expert opinions of Baker and Neumann. However, from the Motion (Doc. 59) and Response (Doc. 67), it appears that those experts are being offered to opine regarding the cause of the structural damage and estimates to repair the structural damage. Because the structural damage is not covered under the Policy, such evidence is no longer relevant to the proceedings, and the motion will be denied as moot.

### B. Kathleen Norflus (Doc. 61), James Purcell (Doc. 62), and Cumulative Expert Testimony (Doc. 63)

Defendant seeks to exclude the expert testimony of Norflus and Purcell. It asserts (1) that Norflus is not qualified to render an opinion regarding the cause of the structural damage; (2) that Norflus's and Purcell's estimates to repair the structural damage are based on unreliable information; and (3) that their testimony is cumulative. As to the first two arguments, in light of the summary judgment analysis, Defendant's objections are moot. With regard to the final objection, to the extent their opinions relate to the non-structural damage, the motions will be denied without prejudice. Whether the opinions are cumulative is more properly decided at trial.

### C. Sonny Gulati (Doc. 64)

Defendant seeks to exclude the expert testimony of Gulati regarding the cause of the structural damage and his estimate to repair that damage. Given the Court's summary judgment analysis, this motion is moot.

**D.  Evidence Regarding Claims Handling and/or Bad Faith (Doc. 74)**

Defendant seeks to preclude Plaintiffs from introducing evidence of its claim handling practices and procedures in this claim and other claims and from making arguments regarding bad faith. Plaintiffs respond that they do not intend to introduce evidence regarding Defendant's claims handling practices in other cases, and Plaintiffs are not pursuing a bad faith claim. Therefore, the motion will be denied as moot in that regard. As to the practices and procedures utilized in handling Plaintiffs' claim at issue in this case, the motion will be denied without prejudice. In the abstract, it appears that such information could be relevant, but such a determination is better made via contemporaneous objections at trial.

**E.  Statements Regarding Contract Interpretation (Doc. 75)**

Defendant seeks to preclude Plaintiffs from making certain arguments regarding the interpretation of the Policy. Given the Court's ruling on summary judgment, these arguments are moot, and the motion will be denied as such.

**F.  Statements Regarding the *Daubert* Standard (Doc. 76)**

Defendant seeks to preclude Plaintiffs from arguing or presenting evidence that improperly references or misrepresents the *Daubert* standard. Specifically, Defendant is concerned that Plaintiffs will argue that the expert opinions of Baker and Neumann are "scientifically unreliable, and thus inadmissible, based on the fact that neither . . . performed testing at the subject Property." (Doc. 76 at 1). Plaintiffs indicate that they do not intend to make any arguments regarding the *Daubert* standard. (Doc. 80 at 1–2). However, to the extent Defendant is seeking to eliminate

Plaintiffs' ability to cross-examine its experts regarding the basis for their opinions, the motion will be denied. *See United States v. Ala. Power Co.*, 730 F.3d 1278, 1282 (11th Cir. 2013) ("[V]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." (quotation omitted)).

### G. Omnibus Motion in Limine (Doc. 77)

In its Omnibus Motion in Limine, Defendant essentially asks the Court to make a ruling that Plaintiffs must follow the rules in presenting their case. There is no basis for the Court to conclude that Plaintiffs will not do so. Further, there is not sufficient specificity in Defendant's Omnibus motion for the Court to make a fully informed ruling. The motion will be denied without prejudice; the issues therein are more appropriately addressed via contemporaneous objections during trial.

## V. CONCLUSION

In accordance with the foregoing, it is **ORDERED** and **ADJUDGED** as follows:

1. Defendant's Motion for Summary Judgment (Doc. 44) is **GRANTED in part** and **DENIED in part**.

    a. Summary judgment is granted in favor of Defendant insofar as Plaintiffs' claim is based on a duty to provide coverage under the Policy for the structural damage and as to any claim for damage to the hot water heater system.

    b. The motion is denied in all other respects.

2. Plaintiffs' Motion for Final Summary Judgment (Doc. 60) is **DENIED**.

3. Plaintiffs' Daubert Motion to Exclude Testimony of Defense Experts, Arthur Baker and Jason Neumann (Doc. 59) is **DENIED as moot**.

4. Defendant's Daubert Motion to Strike Plaintiffs' Expert Witness, Kathleen Norflus (Doc. 61) and Defendant's Daubert Motion to Strike Plaintiffs' Expert Witness, James Purcell (Doc. 62) are **DENIED as moot** insofar as they address opinions regarding structural damage, the motions are **DENIED without prejudice** in all other respects.

5. Defendant's Motion in Limine Regarding Cumulative Expert Testimony (Doc. 63) is **DENIED without prejudice**.

6. Defendant's Daubert Motion to Strike or Limit Plaintiffs' Expert Witness, Sonny Gulati (Doc. 64) is **DENIED as moot**.

7. Defendant's Motion in Limine Regarding Testimony and Evidence Regarding Claims Handling and/or Bad Faith (Doc. 74) is **DENIED as moot** with regard to claims handling in other cases and bad faith, the motion is **DENIED without prejudice** with regard to the handling of Plaintiffs' claim.

8. Defendant's Motion in Limine Regarding Contract Interpretation (Doc. 75) is **DENIED as moot**.

9. Defendant's Motion in Limine Regarding Reference to and Improper Statements Regarding the Daubert Standard (Doc. 76) is **DENIED as moot** as to arguments regarding the *Daubert* standard, the motion is **DENIED** as to Plaintiffs' ability to cross-examine Defendant's experts.

10. Defendant's Omnibus Motion in Limine (Doc. 77) is **DENIED without prejudice**.

11. Defendant's Motion to Strike Plaintiffs' Objection to Defendant's Summary Judgment Response (Doc. 84) is **DENIED**.

**DONE** and **ORDERED** in Orlando, Florida on June 18, 2019.



CARLOS E. MENDOZA
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record